UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DI MARCO CONSTRUCTORS, LLC

                                      Plaintiff,

                                                                                     <u>DECISION AND ORDER</u>

                                                                                        05-CV-6297L

                              v.

SINACOLA, INC.,

                                      Defendant.
_____

**INTRODUCTION**

Plaintiff DiMarco Constructors, LLC ("DiMarco") commenced this diversity action against Sinacola, Inc. pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 seeking declaratory relief regarding the parties' rights and obligations in connection with a construction subcontract agreement. (Dkt. #1). Sinacola has been properly served with process[1] but has failed to appear or

---

[1] It appears that service of process was properly effectuated on Sinacola, although DiMarco's assertions regarding service are somewhat confusing. An affidavit of service indicates that on June 15, 2005 a process server left a copy of the summons and complaint with a person authorized to accept service of process at defendant's business address. This would be sufficient for service upon a corporation pursuant to Fed. R. Civ. P. 4(h)(1). According to DiMarco's attorney, however, service was effected by "personally serving" a copy of the summons and complaint upon Sinacola, Inc. at Sinacola's business address in Brooklyn, Michigan "and by serving a copy via certified mail on July 1, 2005, pursuant to Fed. R. Civ. P. 4(c)." (Dkt. #5, Peartree Aff., ¶7). Corporations, however, cannot be "personally served" and Fed. R. Civ. P. 4(c) does not pertain to service by certified mail. In fact, no part of Fed. R. Civ.
                                                                                                (continued...)

to answer the complaint. On August 11, 2005, the Clerk of the Court entered the default of Sinacola. (Dkt. #4).

DiMarco now moves for default judgment pursuant to Fed. R. Civ. P. 55. (Dkt. #5). DiMarco seeks a declaratory judgment and a judicial determination of the balance due its subcontractor, Sinacola.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

According to the complaint, in May 2003, DiMarco entered into a contract with Wal-Mart Stores, Inc. for the construction of a Wal-Mart Superstore in Adrian, Michigan. On May 9, 2003, DiMarco entered into a Subcontract Agreement ("the Agreement") with Sinacola to perform certain site and demolition work in connection with the project. The original contract price was $871,000. The parties agreed to certain change orders and extras and, therefore, the total amount due on the contract was $902,304.50. To date, DiMarco has paid Sinacola $754,713.55. The parties apparently agree that DiMarco owes Sinacola additional money on the contract. There is great disagreement, though, as to what that amount should be.

DiMarco alleges in the complaint that Sinacola has taken the position that DiMarco owes a balance of $388,673.04. DiMarco asserts, however, that $241,755.45 of the $388,673.04 is for work that has been disapproved by DiMarco and/or Wal-Mart as work that was covered by the parties' original Agreement.

---

[1](...continued)
P. 4 allows for service of process through certified mail. Nevertheless, the affidavit of service indicating that service on Sinacola was made through an authorized agent on June 15, 2005 is sufficient evidence that service was properly effectuated.

DiMarco also claims that pursuant to the Agreement, it is entitled to assert certain so-called "backcharges" as an off-set against any balance due Sinacola. These backcharges are occasioned because of Sinacola's alleged failure to pay its own subcontractors and suppliers, thus subjecting DiMarco to liability. DiMarco claims that by virtue of these defenses and off-sets, it is only obligated to pay Sinacola $45,916.38.

The complaint requests declaratory relief from the Court that: (1) the Agreement is enforceable; (2) that DiMarco is entitled to backcharge Sinacola for payments made by DiMarco to unpaid subcontractors and suppliers; and (3) that Sinacola is not entitled to additional compensation for claimed "extra" work that is within Sinacola's scope of work and which has not otherwise been approved or authorized by DiMarco or Wal-Mart.

## MOTION FOR DEFAULT JUDGMENT

DiMarco now moves for default judgment and judicial determination that it is obligated to pay Sinacola "no more than $45,916.38" under the Agreement. (Dkt. #5, Peartree Aff., ¶16). In the alternative, DiMarco requests a hearing to ascertain the parties' respective rights and obligations, and in particular, the balance due to Sinacola.

After examining DiMarco's application and the evidence submitted, I find that DiMarco has failed to establish its entitlement to default judgment in the manner or amount requested. A hearing on damages is necessary at which DiMarco may present further proof regarding the relief requested.

Fed. R. Civ. P. 55(b) provides in pertinent part that:

(b) Judgment. Judgment by default may be entered as follows:

    \* \* \*

> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; * * * If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

The Clerk has entered Sinacola's default and DiMarco has shown that it is entitled to judgment against Sinacola based on its failure to respond to the allegations asserted in the complaint. However, the Court cannot take at face value that DiMarco is entitled to the judgment that it seeks. Rather, "judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court. . . . Indeed, a defendant's default does not in itself warrant a court in entering a default judgment because there must be a sufficient basis in the pleadings for the judgment entered." *Bianco v. Seaway Indus. Services, Inc.*, 2004 WL 912916, *1 (W.D.N.Y. Apr. 01, 2004) (internal citations and quotations omitted); *see also Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 95-96 (2d Cir.1993). The Court, therefore, must evaluate the merits of the underlying claim and the relief sought. *See Wagstaff-el v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir.1990). Furthermore, the Second Circuit cautions that "defaults are generally disfavored and are reserved for rare occasions," and when there is doubt as to the propriety of default relief, "the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

Based on the evidence DiMarco presented, I do not believe that default judgment in the manner requested by DiMarco should be entered. There are too many issues of fact regarding the alleged backcharges, and the record is not altogether clear that DiMarco is entitled to all of the requested relief under Section 18 of the Agreement. *See Bianco*, 2004 WL 912916, at *2 (denying

default judgment where plaintiffs did not present sufficient evidence that they were entitled to certain consequential damages and attorneys fees under the enforcement provisions of a collective bargaining agreement that allowed them to recover delinquent contributions to various employee benefit funds); *see also Van Limburg Stirum v. Whalen*, 1993 WL 241464, at *4 (N.D.N.Y.1993)("A 'default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'")(quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l. Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)).

     For the reasons discussed below, DiMarco has not proven that it has the right to assert all of the backcharges it seeks under Section 18 of the Agreement. First, DiMarco has not asserted one way or the other whether it gave Sinacola the two-days' notice required by Section 18 before making good Sinacola's deficiency. Second, DiMarco has failed to prove that Section 18 applies even when DiMarco has not yet incurred any actual expense. Third, the evidence DiMarco presented to support other backcharges, particularly travel expenses and certain attorneys' fees, is insufficient to prove that those expenses were incurred as the consequence of Sinacola's failure to pay its subcontractors. Finally, the evidence presented by DiMarco raises questions regarding whether other legal proceedings are pending in the State of Michigan between the parties concerning the same legal issues presented here that could affect the rights and obligations of the parties. I conclude, therefore, that a hearing is necessary pursuant to Fed. R. Civ. P. 55(b)(2) "in order to enable the court to enter judgment."

**BACKCHARGES ALLEGED**

In support of its motion, DiMarco filed the affidavit of Chief Financial Officer Barry Palatas which sets forth in detail the nature and amount of each backcharge it seeks, including attorneys fees. Attached to Palatas's affidavit are documents that he claims prove DiMarco's right to assert the backcharges, including copies of claims of liens, invoices, and statements for attorney services.

DiMarco alleges that this evidence proves that it is entitled to assert the following backcharges:

| | |
|---|---|
| $ 24,884.52 | - for direct payment to Sinacola subcontractor Michigan Pipe and Valve, Inc. |
| $ 17,314.98 | - withheld for a lien filed by Sinacola subcontractor Hertz Equipment Rental |
| $ 9,339.57 | - for travel expenses |
| $ 8,215.00 | - for bond costs for lien discharge bonds |
| $ 41,247.59 | - for legal fees as a result of Sinacola's failure to pay it subcontractors |
| $ 672.91 | - credit to DiMarco for rejected materials |

Total   $101,674.57

Based on the record before the Court, DiMarco has failed to prove that it is entitled to assert the full amount of backcharges alleged.

• **$24,884.52 - claimed due by Sinacola subcontractor Michigan Pipe and Valve, Inc.**

The evidence submitted shows that Michigan Pipe and Valve filed a claim of lien against Sinacola in March 2004, which DiMarco ultimately settled for $22,000. (Dkt. #5, Ex. A). Nevertheless, DiMarco claims it is entitled to backcharge the entire $24,884.52 amount because "Sinacola should not benefit from the lower payment through a corresponding increase in its own contract balance." (Dkt. #5, Palatas Aff., ¶13). I disagree.

Section 18 of the Agreement provides for "consequent costs and damages," not equitable relief. The consequential damages DiMarco incurred as a result of Sinacola's failure to pay the

outstanding balance to Michigan Pipe is $22,000, and no more.  Therefore, DiMarco has proven that it is entitled to backcharge $22,000.

- **$17,314.98 - withheld for a lien filed by Hertz, a Sinacola supplier**

In support of this backcharge, DiMarco filed a one page "claim of lien" asserted by Hertz Equipment Rental, dated December 18, 2003, which indicates that Hertz provided services or materials to Sinacola in the amount of $19,614.98 in connection with the Wal-Mart project that remain unpaid.  DiMarco also filed a copy of a letter sent from a law firm representing Hertz to Wal-Mart's legal department (not DiMarco's legal department) demanding that Wal-Mart pay $17,314.98 for the total remaining principal balance. (Dkt. #5, Ex. A).

DiMarco admits that it did not pay this deficiency.  Instead, DiMarco argues that "to the extent this lien remains outstanding, for which DiMarco **could be** obligated to make payment," it is entitled to withhold $17,314.98 to protect it against potential future loss. (Dkt. #5, Palatas Aff., ¶14) (emphasis added).

I disagree. DiMarco has not shown that it paid $17,314.98, or any other amount, to Hertz to "make good any such deficiency" under Section 18 of the Agreement.  Put another way, DiMarco has not shown that it suffered consequential damages in the amount of $17,314.98 as a result of Sinacola's failure to pay Hertz.  Whether it "could be obligated to make payment" in the future is irrelevant.  DiMarco reads Section 18 too broadly to encompass potential consequential damages, contrary to the plain language of the Agreement.

Moreover, based on evidence that DiMarco filed in support of other backcharges, it appears that DiMarco purchased a $400.00 surety bond to secure the lien filed by Hertz, and that lien may

have been discharged. (*See* Dkt. #5, Ex. D). Questions remain, therefore, regarding what consequential damages DiMarco has incurred as a result of Sinacola's failure to pay Hertz. Until further proof is submitted, DiMarco is not entitled to a backcharge of $17,314.98.

- **$9,339.57 - Travel expenses DiMarco incurred for extra travel to the Project by DiMarco personnel to address issues of Sinacola's non-payment to various subcontractors and suppliers**

DiMarco filed travel invoices from a private aviation company for round-trip flights DiMarco personnel took on November 17, 2003, January 29, 2004, March 8, 2004, and March 15, 2004 from Rochester to Adrian, Michigan. Mr. Palatas alleges that he "attended each of these flights for the express purpose of meeting with counsel for DiMarco, representatives of Sinacola or going to the Project site to specifically address the issues of Sinacola's non-payment to subcontractors and suppliers." (Dkt. #5, Palatas Aff., ¶15).

No evidence is provided about the entity or entities to whom Sinacola allegedly failed to make payment, whether DiMarco "made good" any of those deficiencies, and whether the travel expenses were incurred in connection with DiMarco making good one of Sinacola's obligations. Based on its application, it appears that DiMarco may read Section 18 of the Agreement to allow it to backcharge any and all expenses it incurred as a result of any dispute that may have arisen between Sinacola, its subcontractors, Wal-Mart, or DiMarco, regardless whether DiMarco ever "made good" any such deficiency. I do not read Section 18 so broadly.

More specific information is needed, therefore, about the alleged "issues of Sinacola's non-payment to subcontractors and suppliers" before the Court can find that Section 18 allows DiMarco to backcharge the flight expenses.

- **$8,215.00 for premiums paid to secure lien discharge bonds**

The evidence shows that DiMarco paid a company named Rose and Kiernan, Inc. a total of $8,187.00 in premiums to secure two lien discharge bonds, and paid another $28.00 to Lenawee County to file the bonds. The first bond secured a lien filed by Sinacola and cost DiMarco $7,787.00. The second bond secured a lien filed by Hertz and cost DiMarco $400.00. DiMarco seeks to backcharge a total of $8,215.00 for these expenses under Section 18 of the Agreement.

DiMarco may be entitled to backcharge the $400 premium it paid for the bond to secure the lien filed by Hertz, as well as the fee paid to Lenawee County to file that bond. However, DiMarco has failed to explain how the first bond to secure a lien filed by Sinacola would be considered a consequential cost related to Sinacola's failure to pay its subcontractors. Further proof is needed before the Court can make a finding whether DiMarco is entitled to these backcharges.

- **$41,247.59 in Legal Fees**

Section 18 of the Agreement specifically includes attorneys fees as a cost or damage that could be backcharged. DiMarco has submitted over 50 pages of legal invoices from two different law firms for fees that it claims were incurred "to address issues connected with Sinacola's failure to make payments to certain of its subcontractors and suppliers." (Dkt. #5, Palatas Aff., ¶17). There are also invoices for fees incurred to bring this federal court action.

After reviewing the legal invoices, it is not clear that the all fees can be backcharged to Sinacola as expenses incurred as a result of Sinacola's failure to pay its subcontractors. DiMarco incurred approximately $34,000 in legal fees between January 2004 and May 2005. Invoices from this period of time make reference to, *inter alia*, negotiations with Sinacola's attorneys, a third-party

action, the filing of a complaint, a motion to dismiss, and a hearing.  DiMarco does not explain the nature of this litigation (which presumably is pending in Michigan state court), the issues being litigated, or how those issues were resolved.  It appears that Sinacola commenced some kind of action in Michigan state court that may be related to the issues raised in this action.

Without more information, the Court cannot make a finding that the fees incurred by DiMarco in connection with this litigation can be backcharged.[2]  DiMarco's conclusory statement that the fees were "connected with Sinacola's failure to make payments to certain of its subcontractors and suppliers" is insufficient.  (Dkt. #5, Palatas Aff., ¶17).[3]

As to the $5,107.50 in legal bills paid to Ernstrom and Dreste LLP, the Court is unable to ascertain whether those fees can be backcharged because much of the description for services has been blacked out on the invoices.  (*See* Dkt. #5, Ex. E, invoices dated 11/15/04 and 12/13/04).  More information regarding the nature of these services is needed.

- **$672.91 - for non-conforming materials**

DiMarco claims that it may backcharge $672.91 for non-conforming materials.  DiMarco, however, did not provide any evidence whatsoever regarding the alleged non-conforming materials.  Further, DiMarco does not allege that it gave the required two-days' notice to Sinacola, that Sinacola failed to promptly correct the work deemed non-compliant, or that DiMarco made good the

---

[2] The issue is complicated by the fact that DiMarco does not address the nature of the litigation with Sinacola, or whether there has been any judicial determination regarding Sinacola's rights and obligations vis-a-vis its subcontractors or DiMarco.  These issues could affect DiMarco's right to assert the backcharges it seeks.

[3] The Court also finds it curious that just weeks before DiMarco commenced this federal court action, Sinacola may have been represented by counsel in connection with the litigation in Michigan.  Yet, no one has made an appearance or filed an answer on Sinacola's behalf.

deficiency and incurred $672.91 in consequential damages as a result, as required by Section 18 of the Agreement.

## OTHER ISSUES

In its complaint, DiMarco also sought a judicial determination that Sinacola is not entitled to $388,673.04 in additional compensation for claimed unapproved or extra work. DiMarco's motion for default judgment, however, does not address this issue at all. DiMarco failed to prove that it is entitled to a default judgment regarding this aspect of its complaint.

Clearly, without more information, the Court cannot enter default judgment as requested by DiMarco in its motion. Based on the record before the Court, DiMarco has failed to prove that it is entitled to a judgment from this Court that it owes Sinacola "no more than $45,916.38." A hearing on damages that addresses the issues raised above is required.

## CONCLUSION

DiMarco's motion for default judgment (Dkt. #5) is denied without prejudice. The Court schedules a hearing for February 13, 2006 at 10:30 a.m. to take proof on the issues presented.[4]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 4, 2006.

---

[4] Plaintiff is directed to provide this Court with the status of the action between the parties that was pending in Michigan State Court within fourteen (14) days of entry of this Order. Plaintiff is further obligated to keep the Court here informed of developments in that case.